Case 5:15-cv-00108 Document 66 Filed in TXSD on 08/10/18 Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
August 10, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **GREGORY SPRINGER,** | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:15-CV-108 |
| | § | |
| **ORTELIO RODRIGUEZ,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

This case stems from a vehicle stop gone awry. During the stop, which involved several Border Patrol agents, Plaintiff was tased and eventually arrested. Plaintiff now challenges the lawfulness of (1) the stop itself, (2) the agents' use of force, and (3) his arrest. Specifically, he claims that Border Patrol Agents Ortelio Rodriguez and John Gregory violated his Fourth Amendment rights because the stop was unsupported by reasonable suspicion, the agents' use of force was excessive, and his arrest was unsupported by probable cause. Plaintiff thus sued both agents for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He also sued the United States under the Federal Tort Claims Act.

Pending before the Court is Defendants' motion for summary judgment. (Dkt. 49.) In their motion, Defendants argue that Plaintiff's claims against Agents Rodriguez and Gregory are barred by qualified immunity. Plaintiff disagrees and argues that the agents are not entitled to qualified immunity because the vehicle stop, the agents' use of force, and Plaintiff's arrest all violated Plaintiff's clearly established constitutional rights.

Having carefully considered the record and for the reasons discussed below, the Court denies Defendants' motion in part and grants it in part. The Court concludes that because there is a genuine dispute of material fact as to whether the vehicle stop violated Plaintiff's clearly

established constitutional rights, Defendants are not entitled to summary judgment on qualified-immunity grounds on Plaintiff's unlawful-stop claim. But as to Plaintiff's excessive-force and false-arrest claims, the evidence viewed in the light most favorable to Plaintiff shows that the agents' use of force and decision to arrest Plaintiff did not violate Plaintiff's clearly established constitutional rights. Both claims are therefore barred by qualified immunity.

## Factual Background

Defendants largely agree with Plaintiff's version of the facts. Indeed, Plaintiff's passenger, Susan Farwell, filmed much of the vehicle stop and subsequent arrest on her cell phone. (Dkt. 49, Exh. G; Dkt. 60, Exh. B-1.) But Farwell's video did not capture everything. Thus, where the parties disagree about particular facts that are not reflected in the video evidence, the Court notes those disputed facts accordingly and views them in the light most favorable to Plaintiff. *See Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). However, the Court is not bound to adopt Plaintiff's version of the facts if, at any point, it is contradicted by Farwell's video. *See id.* (explaining that when there is video evidence in the record at the summary-judgment stage, courts should view the facts of the case "in the light depicted by the videotape").

On October 2, 2013, Plaintiff was driving with Farwell southbound on Interstate 35 in Laredo, Texas toward the Laredo International Airport. (Dkt. 60, Attach. 4 at 6.) At some point on their way to the airport, Plaintiff noticed that Agent Rodriguez's car was following them at what Plaintiff perceived to be an unsafe distance. (*Id.*, Attach. 1 at 12–15.) Plaintiff claims that he then "tapped" on his brakes to "flash [his] brake lights" and signal to Agent Rodriguez that he was driving dangerously close to Plaintiff's car.[1] (*Id.* at 15.) Shortly thereafter, Agent Rodriguez

---

[1] Plaintiff, in his response to Defendants' summary-judgment motion, also states that he

2 / 17

activated his emergency lights and pulled Plaintiff over.[2] (*Id.* at 15–16.) Agent Rodriguez alleges that Plaintiff did not tap on his brakes at all. Instead, he asserts that Plaintiff "slammed" on his brakes, which indicated to him that Plaintiff intended to "cause a collision and disable his vehicle." (Dkt. 49 at 21; *see id.*, Attach. 2 at 2, 16–17.) This, in turn, allegedly led Agent Rodriguez to believe that Plaintiff was engaged in criminal activity. (*Id.* at 2–3.)

After Agent Rodriguez pulled Plaintiff over, Plaintiff got out of his car. (Dkt. 60, Exh. B-1 at 00:00.) Agent Rodriguez then unholstered his taser, pointed it at Plaintiff, and repeatedly ordered him to get back in his car. (*Id.* at 00:07–1:11.) Plaintiff did not comply. (*See id.* at 1:11–2:08.) In fact, Plaintiff refused to address Agent Rodriguez directly and instead called another Border Patrol agent with whom he had interacted in the past. (*Id.*) Shortly thereafter, the tension between Plaintiff and Agent Rodriguez temporarily dissipated, and Agent Rodriguez holstered his taser. (*See id.* at 2:08.) Yet the stop continued.

As the stop progressed, other Border Patrol agents, including Agent Gregory, arrived at the scene. (Dkt. 60, Attach. 1 at 20–21, 24–25.) Plaintiff was talking with several of the agents when Agent Gregory suddenly "took issue" with the fact that Plaintiff had his hand in his left pocket. (Dkt. 42 at 10; *see* Dkt. 60, Attach. 1 at 25.) Agent Gregory asserts that at that moment he also spotted a knife clipped to Plaintiff's right pocket. (Dkt. 49, Attach. 4 at 3.) Agent

---

tapped on his brakes to "disengage the cruise control function" on his car. (Dkt. 60 at 9, 24.) But this assertion is directly contradicted by his deposition testimony. (Dkt. 60, Attach. 1 at 15.)

[2] Agent Rodriguez testified at his deposition that he did not pull Plaintiff over; instead, he stated that Plaintiff stopped "on his own." (Dkt. 49, Attach. 2 at 3.) This testimony suggests that Agent Rodriguez did not actually seize Plaintiff within the meaning of the Fourth Amendment. Now, however, Defendants appear not to contest that Agent Rodriguez pulled Plaintiff over. (*See* Dkt. 49 at 23.) At the very least, Plaintiff has set forth evidence showing that Agent Rodriguez stopped him: Agent Rodriguez activated his emergency lights while driving behind Plaintiff in the left lane (Dkt. 60, Attach. 1 at 15–16), and after Plaintiff stopped, Agent Rodriguez repeatedly ordered him to get back in his car (*Id.*, Exh. B-1 at 00:07–1:11).

Gregory accordingly ordered Plaintiff to remove his hand from his pocket, but Plaintiff did not immediately comply. (Dkt. 60, Exh. B-1 at 3:40.) Agent Gregory then grabbed Plaintiff's left arm[3] to "perform an escort hold" and to "control his arm and hand." (Dkt. 49, Attach. 4 at 3.) In response, Plaintiff stiffened his arm and clenched his fist.[4] (Dkt. 60, Exh. B-1 at 3:50.) While the two men struggled, Agent Gregory asked Plaintiff what he had in his hand, but Plaintiff did not respond. (*Id.*) A few seconds later and without warning, Agent Rodriguez tased Plaintiff. (*Id.* at 3:53.) Plaintiff was instantly immobilized and fell to the ground. (*Id.*) He was later arrested but released that same evening. (Dkt. 42 at 13; Dkt. 60, Attach. 1 at 33–36.) He was never charged with any crime. (*Id.* at 37–38.)

## Legal Standards

A.  *Bivens* **and Qualified Immunity**

"Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999). However, government officials are protected from civil damages liability by the doctrine of qualified immunity "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). The Supreme Court has established a two-prong test to determine whether a government official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). And courts have discretion to address either prong first. *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727

---

[3] In his complaint, Plaintiff alleges that Agent Gregory grabbed his arm at the moment he took his hand out of his pocket. (Dkt. 42 at 11.) But Plaintiff points to no evidence in support of this assertion. And it is unclear from Farwell's video whether Plaintiff took his hand out of his pocket before Agent Gregory grabbed it.

[4] Farwell's video shows that Plaintiff did not strike any agent. (Dkt. 60, Exh. B-1 at 3:47–53.) It also appears that Plaintiff did not actually attempt to free himself from Agent Gregory's grip; rather, he refused to allow Agent Gregory to move his arm. (*Id.*)

(5th Cir. 2018). A government official is entitled to qualified immunity unless (1) the facts as alleged by the plaintiff show that the official violated the plaintiff's constitutional rights and (2) those rights were "clearly established" at the time of the official's alleged misconduct. *Id.* A government official's conduct violates a plaintiff's clearly established rights when, at the time of the challenged conduct, the contours of those rights were sufficiently clear that "every reasonable official would have understood" that what he was doing was unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted). A right may be clearly established even without a case "directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (internal quotation marks omitted). Therefore, the law is ordinarily not considered "clearly established" when it is cast "at a high level of generality." *Id.* But in an "obvious case," generalized standards are sufficiently clear, "even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam); *see, e.g., Deville v. Marcantel*, 567 F.3d 156, 164–66 (5th Cir. 2009) (per curiam) (concluding, in an obvious case, that the general standard that an arrest is unlawful without probable cause was clear enough to defeat the defendant's qualified-immunity defense); *see also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) ("[A] qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause.").

**B.     Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once an official pleads qualified immunity at the summary-judgment stage, "the burden shifts to the plaintiff to rebut the defense by establishing a genuine fact issue." *Hunt v. Pierson*,

2018 WL 1750600, at *4 (5th Cir. Apr. 11, 2018). Specifically, the plaintiff must establish a genuine issue of material fact "as to whether the official's allegedly wrongful conduct violated clearly established law." *Winfrey v. Pikett*, 872 F.3d 640, 644 (5th Cir. 2017). A fact is "material" if its resolution in favor of one party might affect the lawsuit's outcome. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). And a dispute as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Lastly, although the plaintiff bears the burden of establishing a genuine fact issue, "all inferences are drawn in [his] favor." *Winfrey*, 872 F.3d at 644.

## Discussion

### A. Unlawful Stop

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. A vehicle stop is a "seizure" within the meaning of the Fourth Amendment and therefore must be reasonable under the circumstances. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). A vehicle stop is considered reasonable only if it is supported by "reasonable suspicion"—that is, a "particularized and objective basis for suspecting the particular person stopped of breaking the law." *Id.* (internal quotation marks omitted). An officer who conducts a vehicle stop must also be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013). "This standard requires more than merely an unparticularized hunch . . . ." *Id.* (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)) (internal quotation marks omitted).

Here, Defendants argue that Agent Rodriguez's decision to initially stop Plaintiff was justified by reasonable suspicion that Plaintiff violated 18 U.S.C. § 111.[5] (Dkt. 49 at 22.) Section 111 makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with any [federal officer] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). Defendants argue that when Plaintiff stepped on his brakes he "interfered with Agent Rodriguez's ability to continue to drive down the road and conduct his duties." (Dkt. 49 at 23.) Defendants also highlight Plaintiff's admission that he applied his brakes to get Agent Rodriguez to "back off." (*Id.* at 21–23; Dkt. 60, Attach. 1 at 15.)

However, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Agent Rodriguez's decision to stop Plaintiff violated the Fourth Amendment. Plaintiff did nothing more than "tap" on his brakes. This alone is not enough for Agent Rodriguez to have reasonably suspected that Plaintiff violated section 111. Reasonable suspicion that a driver has criminally "interfered with" or "impeded" a federal official does not arise simply because the driver decided to apply his brakes at the same moment that a federal official happened to be driving behind him. To hold otherwise would allow federal officials to detain almost any driver—even one who has broken no traffic laws. Furthermore, Plaintiff's subjective intent in deciding to use his brakes so that Agent Rodriguez would "back off" is irrelevant to the Fourth Amendment analysis because that information was not available to Agent Rodriguez at the time he stopped Plaintiff. *See Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (explaining that the reasonableness of a seizure is evaluated based on the facts *available to* an officer at the moment

---

[5] "Border Patrol agents may make roving stops on the basis of reasonable suspicion of any criminal activity, and are not limited to suspicion of violation of immigration laws." *United States v. Perkins*, 352 F.3d 198, 200 (5th Cir. 2003). In fact, Plaintiff admits that a Border Patrol agent may conduct a stop for "non-immigration purposes" if the agent "has witnessed a federal crime." (Dkt. 60 at 9.)

of the alleged Fourth Amendment violation). Therefore, here, viewing the evidence in the light most favorable to Plaintiff, Agent Rodriguez did not have reasonable suspicion to believe that Plaintiff violated section 111, and by stopping Plaintiff, Agent Rodriguez violated Plaintiff's right under the Fourth Amendment against unreasonable seizures.[6]

Because the facts viewed in the light most favorable to Plaintiff show that Agent Rodriguez violated Plaintiff's constitutional right to be free from unreasonable seizures, the Court must next assess whether that right was clearly established. The Court is unaware of—and Plaintiff has not cited—any case addressing the particular factual scenario at issue here. However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). In this instance, despite the lack of factually analogous precedent, the Court finds that the law was clearly established, thus satisfying the second prong of the qualified-immunity analysis, as explained below.

There is no doubt that at the time of the vehicle stop at issue in this case it was clearly established that such a stop comports with the Fourth Amendment only when it is supported by reasonable suspicion. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). It was also clearly established that a violation of section 111 occurs only when the offender *intends* to "do the acts specified" within the statute. *See United States v. Moore*, 958 F.2d 646, 649 (5th Cir. 1992) (citing *United States v. Feola*, 420 U.S. 671, 686 (1975)). Although both of these propositions are cast at a high level of generality, the Court holds that this case is so obvious that any reasonable official in Agent Rodriguez's position would have known that his conduct violated

---

[6] The reasonableness of Agent Rodriguez's decision to stop Plaintiff has no bearing on Plaintiff's excessive-force or unlawful-arrest claims. *See Cty. of L.A., Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017) (holding that when a law enforcement officer allegedly commits multiple Fourth Amendment violations, each violation "should be analyzed separately").

Plaintiff's constitutional rights. Under the facts as alleged by Plaintiff, he did absolutely nothing to raise suspicion that he intended to impede or interfere with Agent Rodriguez in violation of section 111. Braking while driving, without something more, is not at all suspicious. Every reasonable official would know he does not have the sweeping authority to detain any driver who happens to brake in front of him. Indeed, Defendants do not deny this. Rather, they dodge the issue by ignoring Plaintiff's version of the facts and focusing instead on Agent Rodriguez's testimony that Plaintiff "slammed" on his brakes. (Dkt. 49 at 21–22.) Therefore, mindful that it must make all inferences in Plaintiff's favor, the Court holds that Agent Rodriguez is not entitled to summary judgment on qualified-immunity grounds on Plaintiff's unlawful-stop claim.[7]

**B.     Excessive Force**

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). To prevail on an excessive-force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Hanks*, 853 F.3d at 744. When assessing whether the force used was excessive, courts consider the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether he actively resisted arrest or attempted to evade arrest by flight. *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016). This analysis is "necessarily fact-intensive." *Id.* Thus, outside of an obvious case, "officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at

---

[7] The Court wishes to underscore the narrowness of its holding. It does not hold that a driver's decision to apply his brakes can never be relevant to the reasonable-suspicion analysis in the context of a potential violation of section 111. Rather, the Court holds that when a driver merely *taps* on his brakes—a patently benign and frequently executed driving maneuver—and does literally nothing else to raise suspicion, any competent officer should have no reason to suspect that the driver violated section 111.

issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

Here, Plaintiff argues that (1) Agent Gregory used excessive force when he initially grabbed Plaintiff and (2) Agent Rodriguez used excessive force when he tased Plaintiff.[8] (Dkt. 42 at 15; *see* Dkt. 60 at 30.) Defendants, on the other hand, argue that Agent Gregory's decision to grab Plaintiff was reasonable in light of the circumstances: Plaintiff is a "big, powerful man"; he was aggressive; he had a knife clipped to one pocket; and he refused to withdraw his hand from the other, which in Defendants' view, could have also contained a weapon. (Dkt. 49 at 25–26.) Defendants argue further that Agent Rodriguez's decision to tase Plaintiff was also reasonable because, on top of the fact that Plaintiff clearly possessed one weapon and might have been concealing another, he physically resisted Agent Gregory's attempts to control his arm. (*Id.* at 26–27.)

The Court need not decide whether Agents Gregory or Rodriguez violated the Fourth Amendment when they used force against Plaintiff because even assuming a constitutional violation occurred, the agents did not violate clearly established law.[9]

---

[8] Plaintiff's complaint alleges further that Agent Gregory used excessive force "in tackling and beating" Plaintiff. (Dkt. 42 at 15.) But this allegation misrepresents what actually happened. The video evidence shows that Agent Gregory simply grabbed Plaintiff's arm and that Plaintiff fell to the ground after he was tased. (Dkt. 60, Exh. B-1 at 3:47–54.) Thus, the Court limits its excessive-force inquiry to Agent Gregory's "escort hold" and Agent Rodriguez's use of his taser.

[9] Plaintiff argues that the right at issue here was clearly established in light of the Fifth Circuit's holding in *Deville*, 567 F.3d at 167–69. (Dkt. 60 at 38–39.) But that case is inapposite. There, during a routine traffic stop for speeding, the plaintiff failed to comply with the on-scene officers' commands to exit her vehicle. *Id.* at 161–62. In response, the officers broke the plaintiff's car window, pulled her out of her car, and "threw her up against [it]." *Id.* at 162. The plaintiff sued the officers under 42 U.S.C. § 1983, alleging, among other things, that the force they used was excessive. *Id.* at 163. The officers then moved for summary judgment on qualified-immunity grounds. *Id.* But the Fifth Circuit ultimately ruled against them on the excessive-force issue. *Id.* at 169. The court explained that the alleged violation for which the plaintiff was stopped was minor and that there was no reason to believe that she posed a threat

Plaintiff points to no authority in which an officer in circumstances similar to this case was held to have used excessive force. On the contrary, this circuit's precedent supports the conclusion that both agents are entitled to qualified immunity on Plaintiff's excessive-force claim. For example, in *Poole v. City of Shreveport*, the Fifth Circuit held that an officer's use of force is not excessive when the officer uses "measured and ascending actions that correspond[] to [a suspect's] escalating verbal and physical resistance." 691 F.3d 624, 629 (5th Cir. 2012) (internal quotation marks omitted). There, two officers stopped a driver who "was unable to produce proof of insurance and smelled of alcohol." *Id.* at 625. At some point during the stop, one of the officers instructed the driver to turn around while the other grabbed the driver's arm and attempted to place it behind his back. *Id.* In response, the driver backed away. *Id.* at 626. The officers then tried to regain control; one held the driver's left arm while the other "tase[d] him repeatedly." *Id.* When the tasing officer tried to grab the driver's other arm, the driver pulled it away and "verbally and physically resisted" that officer's commands. *Id.* The officer then tased the driver a second time before finally arresting him. *Id.* The driver sued both officers for using excessive force, but the Fifth Circuit ultimately held that the officers were entitled to qualified immunity. *Id.* at 629. The court reasoned that the officers responded with "measured and ascending" actions in a situation that was "tense, uncertain, and rapidly evolving." *Id.* And by refusing to be handcuffed, the driver posed an immediate threat to the officers' safety. *Id.* For

---

while sitting calmly in her vehicle despite also disobeying the officers' commands. *Id.* at 167. The court explained further that aside from refusing to exit her car, the plaintiff did not "physically resist[]" the officers. *Id.* Finally, the court stated that the officers engaged in "little, if any, negotiation" before breaking the plaintiff's window and dragging her out of her car. *Id.* at 168. In contrast, here, Plaintiff possessed a weapon and physically resisted Agent Gregory's attempt to control his arm. Thus, unlike in *Deville*, it was not unreasonable for the on-scene agents to believe that Plaintiff posed a threat to their safety. Moreover, before the agents in this case used force they engaged in sufficient negotiation as Plaintiff repeatedly refused to comply with their requests. Thus, *Deville* is distinguishable and does not clearly establish the right at issue in this case.

these reasons and because the driver "actively resist[ed] the officers' instructions," the court held that the officers' use of force was not "clearly excessive." *Id.* (alteration in original) (internal quotation marks omitted).

Similarly, in *Cadena v. Ray*, the Fifth Circuit explained that "tasing is permissible after a suspect continuously fails to comply and resists handcuffing, particularly when it is not the first method to gain compliance." 2018 WL 1566528, at *3 (5th Cir. Mar. 29, 2018) (quoting *Pratt*, 822 F.3d at 182) (internal quotation marks omitted). In that case, the plaintiff refused to comply with several police officers' orders as the officers arrested the plaintiff's wife. *Id.* at *1. When the plaintiff approached one of the officers from behind, the officer ordered the plaintiff to put his hands behind his back. *Id.* But the plaintiff refused. *Id.* The officer then pushed the plaintiff against a wall, and with the help of another officer, attempted to subdue the plaintiff by wrestling him to the ground. *Id.* Still, the plaintiff "refused to surrender his arms." *Id.* Shortly thereafter, another officer arrived at the scene and immediately tased the plaintiff. *Id.* The plaintiff later sued the officers, claiming that the "take down" and tasing constituted excessive force in violation of the Fourth Amendment. *Id.* at *2. The Fifth Circuit disagreed. It held that the "take down" was permissible because the plaintiff (1) repeatedly disobeyed the officers' commands and (2) approached the officers in a threating manner. *Id.* It also explained that the officers' decision to wrestle the plaintiff to the ground corresponded with the plaintiff's level of resistance. *Id.* Lastly, the Court held that the officer's use of a taser was appropriate because the plaintiff continued to resist the officers after they wrestled him to the ground. *Id.* at 3.

Here, like the officers in *Poole* and *Cadena*, Agents Rodriguez and Gregory acted in a "measured and ascending" manner that corresponded to Plaintiff's escalating verbal and physical resistance. Throughout the stop, Plaintiff "continuously" failed to comply with the agents'

commands. He disobeyed both Agent Rodriguez's repeated orders to get back in his car and Agent Gregory's orders to remove his hand from his pocket. He also resisted the agents physically by refusing to "surrender his arm" and thus posed an immediate threat to their safety. Additionally, when Agent Rodriguez finally decided to use his taser, it was anything but "the first method to gain compliance."

Therefore, the Court holds that the agents' use of force was not objectively unreasonable and that they accordingly did not violate Plaintiff's clearly established rights. Both agents are thus entitled to qualified immunity on Plaintiff's excessive-force claim.

**C.     False Arrest**

An arrest is the "quintessential seizure of the person" under the Fourth Amendment. *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (internal quotation marks omitted). Thus, "a warrantless arrest must be supported by probable cause." *Sam v. Richard*, 2018 WL 1751566, at *4 (5th Cir. Apr. 12, 2018). "Probable cause exists when all of the facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* (quoting *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017)) (internal quotation marks omitted). Accordingly, probable cause "turns on the assessment of probabilities in particular factual contexts." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Thus, for qualified-immunity purposes, an officer who conducts a warrantless arrest does not violate "clearly established" legal principles unless those principles obviously dictate that the specific circumstances that the officer confronted did not constitute probable cause. *Id.* In other words, an officer is entitled to qualified immunity as long as he reasonably concludes that probable cause was present even if he is ultimately mistaken. *Id.* at 591.

Here, Defendants argue that Agents Rodriguez and Gregory had probable cause to arrest

Plaintiff for resisting a federal officer in violation of section 111 because after Plaintiff was pulled over, he resisted "Agent Gregory's efforts to control his left arm and hand." (Dkt. 49 at 28.) Conversely, Plaintiff lays out three reasons why, in his view, the agents did not have probable cause to arrest him for violating section 111. First, Plaintiff contends that because he did not actually "pull[] his arm out of [Agent Gregory's] hand," but instead merely "froze up," he did not use the requisite level of force proscribed by section 111.[10] (Dkt. 60 at 37, 41–42.) Second, he argues that the Government's "refusal to prosecute" him for any crime also helps establish that there was no probable cause to arrest him in the first place. (*Id.* 43–44.) Lastly, Plaintiff points to the deposition testimony of Border Patrol Agent Gregory Burwell—the "deputy patrol agent in charge" at the time of Plaintiff's arrest. (Dkt. 60, Attach. 6 at 6.) Agent Burwell—who was not present during the vehicle stop at issue in this case—testified that he thought that Plaintiff was arrested for stepping on his brakes, not for resisting Agent Gregory's grip. (Dkt. 60, Attach. 6 at 27.) Agent Burwell's testimony, however, is inconsistent with the argument Defendants now raise in their summary-judgment motion. According to Plaintiff, this inconsistency somehow shows that the agents lacked probable cause to arrest him. (Dkt. 60 at 43–44.)

As with Plaintiff's excessive-force claim, the Court need not answer whether the agents actually violated the Fourth Amendment when they arrested Plaintiff. Even assuming the agents lacked probable cause to arrest him, their actions were not objectively unreasonable in light of clearly established law.

---

[10] Plaintiff also appears to suggest that even if he did forcibly resist Agent Gregory's "escort hold," his actions were nonetheless justified because Agent Gregory did not have probable cause to restrain Plaintiff in the first place. (Dkt. 60 at 41–42.) However, this argument fails because a federal official is protected by section 111 "even if he is effecting an arrest without probable cause." *See United States v. Dombrowsky*, 111 F. App'x 716, 718 (5th Cir. 2004) (per curiam).

Plaintiff's overarching argument draws a very fine distinction. Essentially, he suggests that by stiffening his arm instead of affirmatively attempting to remove it from Agent Gregory's grip, he did not "forcibly" resist a federal officer. *See* 18 U.S.C. § 111. Thus, in his view, the agents did not have probable cause to arrest him for violating section 111. But even assuming Plaintiff did not attempt to remove his arm from Agent Gregory's grip, he cites no case that clearly establishes the rule he proposes.[11] Indeed, at the time of the vehicle stop, "the Fifth Circuit ha[d] not had occasion to define 'forcibly' in the context of § 111(a)(1)." *Sophin v. United States*, 153 F. Supp. 3d 956, 965 (W.D. Tex. 2015). And here, it is undeniable that Plaintiff's refusal to succumb to Agent Gregory's "escort hold" involved an application of some force. It is also undeniable that his actions constituted resistance. *See* Webster's New Collegiate Dictionary 985 (1977) (defining "resist" as the "exert[ion] [of] force in opposition"). Thus, in the absence of precedent that obviously dictates that Agents Rodriguez and Gregory lacked probable cause, it was not objectively unreasonable for them to believe they had constitutional authority to

---

[11] Instead, Plaintiff argues that the agents did not have probable cause to arrest him because the facts of this case are distinguishable from the facts in *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013). (Dkt. 60 at 41.) Defendants cite *Ramirez* in their summary-judgment motion to support their argument that Plaintiff actually violated section 111 when he refused to allow Agent Gregory to control his arm. (Dkt. 49 at 26–27.) In *Ramirez*, the Fifth Circuit held that "pulling out of an officer's grasp is sufficient to constitute resisting arrest" under Texas law. 716 F.3d at 376. Here, Plaintiff argues, unlike the arrestee in *Ramirez*, he did not actually "pull" his arm out of Agent Gregory's grasp, and thus, there was no probable cause to believe that he resisted Agent Gregory in violation of section 111. (Dkt. 60 at 41.) But the court in *Ramirez* did not hold, as Plaintiff suggests, that refusing to succumb to an officer's grasp cannot also constitute resisting arrest. Furthermore, that case concerned only the Texas state-law equivalent of section 111. Thus, it in no way clearly establishes that the agents here did not have probable cause to believe that Plaintiff violated federal law.

Plaintiff also appears to misconstrue his burden of proof. He apparently suggests that because Defendants cannot point to a case in which an individual was found to have violated section 111 in circumstances similar to those at issue here, Defendants' qualified-immunity defense must fail. But it is not Defendants' burden to produce cases showing that Plaintiff's rights were not violated or that those rights were not clearly established. Rather, it is Plaintiff's burden to raise a genuine issue of material fact as to whether the agents violated his clearly established rights. *Ramirez* does not help Plaintiff satisfy this burden.

arrest Plaintiff for violating section 111.

Plaintiff's two additional arguments in support of his contention that the agents lacked probable cause are also unavailing. First, it is irrelevant that Plaintiff was ultimately never charged with violating section 111. Probable cause for an arrest exists if the arresting officer was "aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Second, Agent Burwell's inconsistent testimony is also irrelevant to the probable-cause determination. Whether probable cause exists is an objective test, and it depends only upon "the facts known by" the arresting officer at the time of the allegedly unlawful arrest. *Richard*, 2018 WL 1751566, at *4. Agent Burwell's after-the-fact, subjective understanding of why Agents Rodriguez and Gregory arrested Plaintiff was not a fact known by the agents at the time of the arrest, and thus has no bearing on whether they had probable cause.

Therefore, Agents Rodriguez and Gregory are also entitled to qualified immunity on Plaintiff's unlawful-arrest claim.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 49) is hereby DENIED IN PART and GRANTED IN PART. Summary judgment is denied as to Plaintiff's unlawful-stop claim, and it is granted as to Plaintiff's excessive-force and unlawful-arrest claims. Accordingly, Plaintiff's excessive-force and unlawful-arrest claims are hereby DISMISSED WITH PREJUDICE. Furthermore, because Agent Gregory is implicated in those two claims only—and not in Plaintiff's unlawful-stop claim—Plaintiff has no remaining claims against him. Thus, the Clerk of Court is DIRECTED to TERMINATE him from the case.

IT IS SO ORDERED.

SIGNED this 10th day of August, 2018.

_____
Diana Saldaña
United States District Judge